CENTER FOR DISABILITY ACCESS
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

**Timothy Daubert and Roger Cortez**,

Plaintiffs,

v.

**City of Lindsay** and Does 1-10,

Defendants.

Case No.: 1:14-CV-00068-AWI-SKO

**Plaintiff's Opposition to Defendant City of Lindsay's Motion to Dismiss Pursuant to FRCP 12 (b)(6)**

Plaintiff Roger Cortez hereby submits his opposition to Defendant City of Lindsay's Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 12(b)(6).

//

//

//

//

//

//

//

**LEGAL STANDARD**

A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint, and the Court must accept all well-pleaded factual allegations as true. Iqbal, 556 U.S. at 664, 129 S. Ct. at 1940-41. See also Schwarz v. United States, 234 F.3d 428, 435 (9th Cir.2000); Hernandez v. Vallco Intern. Shopping Center, LLC, (N.D. Cal., Mar. 14, 2011, 10-CV-02848-LHK) 2011 WL 890720 (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987))("In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor."). Because of the lesser role pleadings play in federal practice and the liberal policy re amendment, Rule 12(b)(6) motions are "viewed with disfavor and rarely granted". Broam v. Bogan, 320 F3d 1023, 1028 (9th Cir. 2003) (Rule 12(b)(6) dismissal with prejudice proper only in "extraordinary" cases). Leave to amend must be

granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.[1]

**ARGUMENT**

Defendant's motion is replete with overly restrictive and misleading statements of the federal law applicable to this case. Plaintiff can pursue a claim based on associational standing under both federal and state law, and has properly pled facts supporting such claims in his Complaint.

**1. Plaintiff can pursue an associational standing claim under Title II of the ADA.**

The availability of associational claims under Title II of the ADA is well-established, and evinced by Title II's statutory language, the Department of Justice's implementing regulations and Title II's incorporation of the standards and prohibitions contained in Titles I and III of the ADA and Section 504 of the Rehabilitation Act.

***a. Associational claims are available to Plaintiff under the plain language of Title II.***

It is well settled that "Congress may, by legislation, expand standing to the full extent permitted by Article III, thus permitting litigation by one 'who otherwise would be barred by prudential standing rules.' " Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979), citing Warth v. Seldin, 422 U.S. 490, 501 (1975).[2] Unequivocally, Congress has legislatively expanded standing under Title II to the full extent permitted by

[1] Hernandez v. Vallco Intern. Shopping Center, LLC, (N.D. Cal., Mar. 14, 2011, 10-CV-02848-LHK) 2011 WL 890720 (internal citation omitted.)

[2] Prudential standing is the judicially created limitation on access to the federal courts.

Article III of the United States Constitution, and to include associational standing. Innovative Health Systems, 117 F. 3d at 47; MX Group, 293 F. 3d at 332-335. In Innovative Health Systems v. City of White Plains, the District Court rightly recognized:

> ... Title II of the ADA prohibits discrimination on the basis of disability in general term ... and extends relief to "any person alleging discrimination on the basis of disability" .... By it's plain meaning, "any person alleging discrimination ..." need not be an individual with a disability, but *may be anyone injured by a covered entity's discrimination against an individual on the basis of that individual's disability.* [Emphasis added][citing to 42 U.S.C. § 12133]

Innovative Health Systems, 931 F. Supp. 222, 236 (S.D. N.Y. 1996). The Second Circuit Court of Appeals expressly affirmed the District Court's rationale, confirming the broad scope of standing pursuant to Title II of the ADA. Innovative Health Systems, 117 F. 3d at 47.[3] See also, McKivitz v. Twp. of Stowe, 769 F. Supp. 2d 803, 818 (W.D. Pa. 2010)(Title II's statutory language "evinces a congressional intent to define an individual's standing to assert statutory claims as broadly as is permitted under Article III")(citing Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 407 (3d Cir. 2005); MX Group, Inc. v. City of Covington, 293 F.3d 326, 334 (6th Cir.2002); Innovative Health Systems v. City of White Plains, 117 F.3d 37, 47 (2d Cir.1997)).

[3] The Second Circuit Court of Appeals also likened the language in Title II of the ADA to the Rehabilitation Act, 29 U.S.C. §794a(a)(2) and concluded that it " 'evinces a congressional intention to define standing to bring a private action under 504 [and Title II] as broadly as is permitted by Article III of the Constitution.' " Innovative Health Systems, 117 F. 3d at 47, citing Innovative Health Systems, 931 F. Supp. at 237 [remaining citation omitted].

***b. <u>Associational claims are explicitly available to Plaintiff under the Department of Justice's Title II regulations.</u>***

As also noted by the court in <u>Innovative Health Systems</u>, the implementing regulations of Title II contain an explicit prohibition against discrimination against individuals because of their association with individuals with disabilities. <u>Id</u>., citing 28 C.F.R. §35.130(g) ("[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."). The Department of Justice promulgated this regulation at Congressional request. See 42 U.S.C. § 12134(a). As the regulation is neither contrary to the statute nor arbitrary and capricious, it is entitled to deference under <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). A number of cases have recognized the Department of Justice's authority to issue this regulation. See, e.g., <u>A Helping Hand, L.L.C. v. Balt. County, Md</u>., 515 F.3d 356, 362-64 (4th Cir. 2008); <u>Addiction Specialists</u>, 411 F.3d at 405–06; <u>MX Group,</u> 293 F.3d at 334–35.

***c. <u>Title II of the ADA incorporates the standards and prohibitions contained in Titles I and III of the ADA and Section 504 of the Rehabilitation Act, both of which permit associational claims.</u>***

The legislative history of the ADA emphasizes the intent of Congress that Title II's prohibition against discrimination " 'be identical to those set out on the applicable provisions of Title I and III of this legislation ...' " See <u>Innovative Health Systems, Inc. v. City of White Plains</u>, 117 F. 3d 37, 47 (2nd Cir. 1997) citing H.R. Rep. No. 485 (II), 101st Congress, Second Session, 84 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 367. Title I and

Title III of the ADA both expressly prohibit associational discrimination. 42 U.S.C. §12112(b)(4); 42 U.S.C. §12182(b)(1)(E). Not recognizing associational claims under Title II would run afoul of this clear Congressional intent.

Additionally, the ADA's statutory language makes it very clear that the ADA incorporates the standards and regulations implementing section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The plain language of Section 12201(a) of the ADA constitutes an explicit congressional mandate that the ADA effectively adopt the substantive and remedial provisions of Section 504 and its implementing regulations:

> Except as otherwise provided in this Chapter, nothing in this Chapter shall be construed to apply a lesser standard than the standards applied under Title V of the Rehabilitation Act of 1973 (29 U.S.C. 790 *et seq.*) or the regulations issued by Federal agencies pursuant to such title.

42 U.S.C. § 12201(a).[4] In accord with this mandate, the applicable enforcement provision of Title II provides that the "remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides *to any person* alleging discrimination on the basis of disability in violation of section 12132 of this title." (42 U.S.C. §12133) [Emphasis added]. In this regard, Title II of the ADA expressly incorporates the broad enforcement provisions of the Rehabilitation Act, which afford the "remedies ... set forth in Title VI of the Civil Rights Act of 1964 ... to *any person aggrieved* by any act or failure to act by any recipient of federal system or federal provider of a such a systems

[4] The ADA's statutory language also mandates that the Department of Justice promulgate regulations that are consistent with regulations implementing section 504. See 42 U.S.C. § 12134(b).

under §504 of this Act." 29 U.S.C. §794a(a)(2) [Emphasis added].[5] This, in turn, supports a finding that associational claims are available under Title II of the ADA.

### *d. Defendant admits and acknowledges that associational claims have been recognized under Title II of the ADA.*

In its motion, Defendant acknowledges and admits to the body of case law recognizing associational standing under Title II, pursuant to its legislative history and implementing regulations. Motion at p. 8, citing to 28 C.F.R. § 35.130(g); A Helping Hand v. Baltimore Cty, 515 F.3d 356, 363-64 (4th Cir. 2008); MX Group, Inc. v. City of Covington, 293 F. 3d 326, 333-335 (6th Cir. 2002); Innovative Health Systems, Inc. v. City of White Plains, 117 F.3d 37, 47-48 (2d Cir. 1997); Schneider v. County of Will, 190 F. Supp. 2d 1082, 1088-1091 (N.D. Ill. 2002).

In its attempt to distinguish the above-listed precedent, Defendant unpersuasively argues that the legislature and courts did not intend for associational standing to apply to Title II cases involving accessibility issues. In making this ridiculous and unsupported argument, Defendant cites to the three non-exclusive, non-exhaustive and solely illustrative examples of associational discrimination contained in the in the Title II Technical Assistance Manual and a couple of zoning cases as purported "proof" that associational standing does not apply in cases involving the inaccessibility of a public entity's programs services and activities due to physical barriers. Notably, none of these authorities state or even suggest such a restriction.

---

[5] Standing under Title II of the ADA is treated the same as standing under the Federal Rehabilitation Act as these acts are to be "interpreted consistently with one another" MX Group, Inc. v. City of Covington, 293 F.3d 326, 332 (6th Cir.2002), citing Andrews v. State of Ohio, 104 F. 3d 803, 807 (6th Cir. 1997); Bay Area Addiction Research and Treatment, Inc. v. City of Antioch, 179 F. 3d 725, 731 (9th Cir. 1999); Innovative Health Systems, Inc. v. City of White Plains, 117 F. 3d 37, 44-46 (2nd Cir. 1997).

Reading such a limitation into the ADA would be contrary to the congressional intent discussed above, and conflict with the ADA's broad remedial purpose.[6]

**2. Plaintiff can pursue an associational standing claim under Section 504 of the Rehabilitation Act.**

As noted above, Section 504 of the Rehabilitation Act provides a remedy "to *any person* aggrieved by any act or failure to act" by a recipient of federal financial assistance. 29 U.S.C. § 794a(a)(2)[Emphasis added]. This statutory language – like that found in 42 U.S.C. § 12133 of the ADA - evinces a congressional intent to define an individual's standing to assert statutory claims as broadly as is permitted under Article III. McKivitz, 769 F. Supp. 2d at 818 (internal citations omitted).

Moreover, it is well established that there is no significant distinction between the rights created by the Rehabilitation Act and the ADA. Pierce v. County of Orange, 526 F.3d 1190, 1216 n.27 (9th Cir. 2008) (Title II of the ADA was modeled after section 504; "'[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act'" (quoting Zukle v. Regents of Univ. of California, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999)); Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997) (noting that "Congress has directed that the

---

6 Congress enacted the Americans with Disabilities Act ("ADA") recognizing that "society has tended to isolate and segregate individuals with disabilities" and that discrimination against people with disabilities continues to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose" of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Noel v. New York City Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012). See also, Kinney v. Yerusalim, 812 F.Supp. 547 (E.D. Pa 1993), affirmed 9 F.3d 1067, certiorari denied 114 S.Ct. 1545, 511 U.S. 1033 (1996)(the ADA is a "remedial statute, designed to eliminate discrimination against the disabled in all facets of society. As a remedial statute it must be broadly construed to effectuate its purposes.").

ADA and RA be construed consistently" (citing 42 U.S.C. § 12134(b))). Therefore, the associational standing that has been determined to exist under the ADA (see discussion of 42 U.S.C. § 12133; 42 U.S.C. §12112(b)(4); 42 U.S.C. §12182(b)(1)(E); and 28 C.F.R. §35.130(g), above), must be construed to exist under Section 504.

Defendant affirmatively recognizes "the cases which have interpreted the Rehabilitation Act to provide similar relief as the association provision of Title II", yet again argues – without any support and contrary to the legislative history and purposes of the Act[7] - that associational standing should not be extended to accessibility claims. Motion at p. 11. This argument must be rejected, and associational standing determined to exist under the Rehabilitation Act for purposes of the instant case.

**3. Plaintiff can pursue an associational standing claim under the California Disabled Persons Act**

California's Disabled Persons Act ("CDPA") provides that conduct violative of the ADA is also violative of state law. Cal. Civ. Code § 54(c) ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101–336) also constitutes a violation of this section"). The CDPA's use of the phrase "any individual" confirms the legislature's intent to convey broad standing under the CDPA consistent with the ADA. As associational standing exists under the ADA, Plaintiff may pursue an associational discrimination claim under the CDPA.

//

//

//

[7] Elimination of architectural barriers was one of the central aims of the Rehabilitation Act, see, e. g., S. Rep. No. 93-318, p. 4 (1973).

**4. Plaintiff has adequately pled his associational discrimination claims.**

Defendant argues that Plaintiff has failed to properly plead the elements of associational standing, relying solely on Schneider v. County of Will, 190 F. Supp. 2d 1082 (N.D. Ill. 2002), a singular case out of the Eastern District of Illinois. In Schneider, a case involving unsuccessful applicants for a special use permit for a proposed bed and breakfast with accessible guest rooms, the court held that the elements of an associational claim under Title II are: (1) the plaintiff's logical and significant association with individual with disabilities; (2) that public entity knew of that association; (3) that public entity discriminated against plaintiff because of that association; and (4) plaintiff suffered direct injury as result of discrimination. Id. at 1088-1091.

The Schneider test has not been utilized or cited to in the 9th Circuit, and accordingly, should have no precedential application in this matter. Moreover, although the Schneider test may make practical sense in cases involving zoning or other decisions affirmatively made by public entities where direct knowledge and an intent to discriminate is relevant to the discrimination analysis; extending the test to cases involving architectural barriers in public facilities is unnecessarily burdensome, undermines the liberal standing of ADA plaintiffs, and frustrates the remedial purpose and enforcement of the ADA.

Associational standing in Title II cases involving architectural barriers in public facilities are more appropriately analyzed in a manner similar to cases involving places of public accommodation under Title III. First, the Court should determine whether Plaintiff has pled facts sufficient to establish Article III standing: (1) that plaintiff suffered an injury in fact; (2) that the injury is fairly traceable to defendant's actions; and (3) that it is likely

that plaintiff's injury will be redressed by a favorable court ruling. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Second, the Court should determine whether the plaintiff has alleged some "specific, direct, and separate injury" as a result of association with a disabled individual. Glass v. Hillsboro Sch. Dist. 1J, 142 F.Supp.2d 1286, 1288 (D.Or.2001)(citations omitted).[8]

Plaintiff has pled facts sufficient to demonstrate associational standing under this approach, which has been utilized by district courts in the 9th Circuit. See e.g., Glass v. Hillsboro Sch. Dist. 1J, 142 F.Supp.2d 1286 (D.Or.2001); George v. AZ Eagle TT Corp., CV-12-01175-PHX-ROS, 2013 WL 4446543 (D. Ariz. Mar. 12, 2013). Plaintiff alleges that he and his disabled granddaughter have visited the Park, which is owned and operated by the City, on multiple occasions. Complaint ¶¶ 5, 8, 21. Plaintiff alleges that he plans to return to the Park with his disabled granddaughter in the future, to enjoy the programs, services and activities offered there to the public. Complaint ¶ 24. Plaintiff alleges that he is, and has been, deterred from returning to the Park with his granddaughter because of discriminatory conditions on the property. Complaint ¶ 25. Plaintiff sets forth the specific architectural barriers that he and his granddaughter have encountered, and

[8] In Glass, the court found parents of a child with autism could not bring an associational discrimination claim against a school district for denying their independent specialists access to classrooms because the parents had no personal right, independent from their children's placement in school, to have their experts observe the classrooms. The court stated, "plaintiffs must also demonstrate that they themselves were harmed; that is, that they suffered a specific, separate, and direct injury to themselves caused by defendant's actions." Id. at 1289. The court provided a useful hypothetical to demonstrate when associational standing is proper: "[i]f a non-disabled companion is excluded from the theater because of his or her association with a disabled individual (for example, no room in the theater for wheelchairs), then the non-disabled companion suffers direct harm to his or her own independent right to be in the theater because of the association with a disabled person." Glass, 142 F.Supp.2d at 1291–92.

articulates the specific, direct, and separate injury. Complaint ¶¶ 21, 22 (incorporating 20), 23. Accordingly, Defendant's motion should be denied.

For the convenience of the Court, the specific allegations made by Plaintiff in his Complaint and cited to herein are:

a. Plaintiff Roger Cortez ("Cortez") is, and at all times relevant herein was, a California resident with physical disabilities. Cortez is an individual known to have a relationship or association with a person with a disability protected by federal and state antidiscrimination laws. Cortez is the grandfather of a child with significant disabilities, including a chromosomal disorder, lack of motor skills, visual and hearing impairments and epilepsy, who uses a wheelchair for mobility. Cortez's granddaughter is, and at all times relevant herein was, a "qualified person with a disability" and a "physically disabled person" as those terms are defined under the ADA and its implementing regulations (42 U.S.C. § 12102; 28 C.F.R. § 35.104), Section 504 and its implementing regulations (29 U.S.C. § 794; 45 C.F.R. § 84.22(a)) and California law (Cal. Gov. Code § 12926). Complaint ¶ 5.

b. At all times relevant herein, the City owned, controlled, maintained and exercised dominion over the public parking, pedestrian paths of travel and other public facilities constituting Lindsay City Park, a public park located in the City of Lindsay, County of Tulare, California. Complaint ¶ 8.

c. On a number of occasions, including May 22, 2013, Cortez has visited the Park with his granddaughter. Cortez enjoys walking around the park with his granddaughter, and is required to push her around in her wheelchair due to her disabilities. Complaint ¶ 21.

d. During his visits to the Park with his granddaughter, Cortez has encountered the same barriers along the pedestrian paths of travel as [co-plaintiff] Daubert. The sandy, and sometimes wet pedestrian walkways are difficult for Cortez to navigate pushing his granddaughter's wheelchair, and causes him concern about her safety. Complaint ¶22. [Barriers incorporated by reference into this paragraph are listed at paragraph 20 of the Complaint and include: the pedestrian paths of travel in and around the Park that are made of sand; the pedestrian path of travel to

restroom that is made of sand, and is often entirely covered with water from nearby sprinklers; the path that leads to the door of the Community Center in the Park is made primarily of sand, and has an approximately 1 inch hump across it, creating a difficult and dangerous obstacle for wheelchairs.]

e. Defendants constructed and/or altered the pedestrian walkways at the Park after March 15, 2012. Complaint ¶ 30.

f. Defendants constructed and/or altered the pedestrian walkways at the Park after January 26, 1992. Complaint ¶ 31.

g. Defendants constructed and/or altered the pedestrian walkways at the Park after December 1981. Complaint ¶ 32.

h. Plaintiffs plan to, and would like to continue to visit the Park in the future, but Defendants' failure to ensure the accessibility of its public facilities at the Park has caused them to experience difficulty and feel anxious, frustrated, embarrassed, conspicuous, unwelcomed and like second class citizens. Complaint ¶ 24.

i. Until the aforementioned barriers to the Park are removed, and Defendants' discriminatory policies and practices modified, Plaintiffs will continue to be denied full and equal access to the programs, services and activities offered by Defendants to the general public at the Park, and will suffer ongoing discrimination and damages by being excluded and deterred from returning there. Complaint ¶ 25.

These allegations provide more than a "formulaic recitation" of the law. They set forth sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, meeting the pleading standards articulated in Twombly and Iqbal. Accordingly, Defendant's motion must be denied.

//

//

//

//

**5. Leave to Amend**

Should this Court be inclined to dismiss Plaintiff's Complaint despite the arguments set forth above, Plaintiff asks that in the alternative he be granted leave to amend. Leave to amend should be granted "when justice so requires." Fed. R. Civ. P. 15(a).

**CONCLUSION**

Based on the above-mentioned facts and law, Plaintiff respectfully requests that the Defendant's motion to dismiss be denied.

Dated: March 10, 2014

CENTER FOR DISABILITY ACCESS

/s/ Mark Potter

By:________________________

Mark D. Potter

Attorneys for Plaintiff