1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**EASTERN DISTRICT OF CALIFORNIA**

7
8

**Timothy Daubert and Roger Cortez;**

9

**Plaintiffs,**

10

**v.**

11

**City of Lindsay,**

12

**Defendants**

13
14
15

CASE NO. 1:14-CV-00068

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING APPLICATION FOR STAY AND EARLY EVALUATION CONFERENCE**

**(Docs. No. 4 and 6)**

16      Plaintiffs Timothy Daubert ("Daubert") and Roger Cortez ("Cortez") ("Plaintiffs,"

17 collectively) bring this action against the City of Lindsay ("City"). Plaintiffs allege disability-

18 related causes of action under the Americans with Disabilities Act ("ADA"), the Rehabilitation

19 Act ("RA"), and the California Disabled Persons Act ("DPA"). The City filed this Rule 12(b)6

20

21 motion to dismiss Plaintiff Cortez's complaint in full for failure to state a claim upon which relief

22 can be granted. Subsequently, the City filed an application for stay and an early evaluation

23 conference. For the reasons set forth below, the City's motion will be denied in part and granted in

24 part. The application for stay and early evaluation conference will be denied.

25

**I.      Background[1]**

26

27      Cortez's great-granddaughter has significant disabilities, including lack of motor skills,

28

---

[1] Motions to dismiss accept as true the background factual allegations alleged in the complaint as required by Rule 12(c) of the Rules of Federal Procedure. This Court does not adjudge these allegations to be true or false.

and uses a wheelchair for mobility. Doc. No. 1, ("Complaint") at ¶ 5; Doc. No. 18 at 2:13-14.

Cortez's great-granddaughter is a "qualified person with a disability" and a "physically disabled

person" as those terms are used under the ADA, the RA, and the CDPA. Doc. No. 1, Complaint at

¶ 5.

The City owns, controls, and maintains Lindsay City Park ("Park"), which includes

pedestrian paths and public facilities. Doc. No. 1, Complaint at ¶ 8. The pedestrian paths are made

of sand and are often wet from sprinkler use. Doc. No. 1, Complaint at ¶ 20(a). A sandy path is the

only access to the Park's restroom facilities. Doc. No. 1, Complaint at ¶ 20(b). The path to the

Park's Community Center is primarily made of sand and is crossed by an approximately one-inch

hump.  Doc. No. 1, Complaint at ¶ 20(c).

On May 22, 2013 and on other dates, Cortez visited the park with his great-granddaughter.

Doc. No. 1, Complaint at ¶ 21. Cortez pushes her wheelchair through the park, as her disabilities

require. *Id*. Cortez has significant difficulty navigating his granddaughter's wheelchair along the

pedestrian paths and accessing the Park's facilities. Doc. No. 1, Complaint at ¶ 22. Conditions at

the Park cause Cortez to "experience difficulty and feel anxious, frustrated, embarrassed,

conspicuous, unwelcomed and like second class citizens." Doc. No. 1, Complaint at ¶ 24. Cortez

would like to return to visit the Park with his great-granddaughter in the future. Doc. No. 1,

Complaint at ¶ 25. Because of his association with his great-granddaughter, Cortez is denied full

and equal access to the programs, services and activities that the Park offers the general public.

Doc. No. 1, Complaint at ¶ 25; Doc. No. 18 at 2:12-13.

On January 16, 2014, Plaintiffs filed this action alleging violations of ADA Title II, 42

U.S.C. §§ 12131 et seq.; RA Section 504, 29 U.S.C. § 794; and, the DPA, Cal. Civ. Code §§ 54 et

seq. On January 28, 2014, the City filed this Rule 12(b)6 motion for failure to state a claim upon

which relief can be granted. Doc. No. 4, ("Motion"). The City asserts that Cortez lacks standing

under all relevant causes of action because he has not alleged that he is a qualified disabled person

under any of the disabilities protection acts and that the associational provisions of each statute do not extend to cover Cortez's claims. *See* Doc. No. 4, Motion. Additionally, the City filed a motion for a stay of proceedings pursuant to California Civil Code Section 55.54(d)(1) and an early evaluation conference pursuant to California Civil Code Section 55.54(d)(2). Doc. No. 6.

## II.    Legal Standard

The City filed a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. The City's argues that Cortez lacks standing under all relevant causes of action. Thus, this motion is properly considered under Rule 12(b)(1) for lack of subject matter jurisdiction.

Federal courts are courts of limited jurisdiction. Complaints are subject to a motion to dismiss where the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff carries the burden of proof of the existence of subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). To satisfy subject matter jurisdiction pleading standards, the Ninth Circuit succinctly explains:

> "To invoke a federal court's subject-matter jurisdiction, a plaintiff needs to provide only 'a short and plain statement of the grounds for the court's jurisdiction.' Fed. R. Civ. P. 8(a)(1). The plaintiff must allege facts, not mere legal conclusions, in compliance with the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)."

*Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

A defendant may challenge subject matter jurisdiction in one of two ways: through a "facial attack" or a "factual attack." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A facial attack challenges the sufficiency of the plaintiff's allegation to invoke federal jurisdiction whereas a factual attack challenges the truth of the allegations. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Pride v. Correa*, 719 F.3d 1130, 1133 n. 6 (9th Cir. 2013). Here, Defendant challenges the facial sufficiency of Plaintiff's pleading since Cortez has not shown an "adverse action against the Plaintiff himself [and] Plaintiff cannot establish a claim for associational

3

discrimination" within the meaning of the ADA, Doc. No. 4, Motion at 10:1, "there are no factual allegations that Plaintiff himself is an individual with a disability" for purposes of the RA, *id*. at 10:18, and "Plaintiff has not demonstrated that he is disabled" or alleged that he "was denied equal access to the City's Park" for purposes of the DBA, *id*. at 12:20-22.

The district court resolves a facial challenge as it would a Rule 12(b)(6) motion to dismiss and is limited to considering the allegations in the complaint. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In reviewing a complaint under Rule 12(b)(6), all of the complaint's factual allegations are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Smith v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004). However, the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

### III.    Discussion

#### a.  Americans with Disabilities Act Title II Standing

Cortez alleges an association discrimination claim under ADA Title II. Doc. No. 1, Complaint at ¶ 38. The City argues that this cause of action should be dismissed for failure to state a claim upon which relief can be granted. Doc. No. 4, Motion at 7:12-28, 8:1. Specifically, the City argues that Cortez lacks standing under ADA Title II because he has failed to allege that he is an individual with a disability, that Title II does not vest enforcement rights in non-disabled

individuals, and that the ADA association provision found in Title III does not apply against public entities. Doc. No. 4, Motion at 7:12-28, 8:1. Moreover, the City alleges Cortez "has pleaded no facts showing that he personally suffered a separate and distinct injury." Doc. No. 13 at 2:2-3. The City's argument is unpersuasive.

### i.      Title II's Enforcement Provision

Title II's antidiscrimination provision states that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II is devoid of language that expressly allows non-disabled plaintiffs to bring a claim in support of disabled persons. However, Title II's enforcement provision states that Title II's rights and remedies "shall be the remedies, procedures, and rights this subchapter provides to *any person* alleging discrimination on the basis of disability…" 42 U.S.C. § 12133 (emphasis added). The Court must determine whether the language "any person" extends the right of enforcement beyond those whom Title II directly protects.

The City argues that a comparison between Title II's enforcement provision and Title III's associational enforcement provision, which applies only to places of public accommodation, precludes associational standing under Title II. *See* Doc. No. 4, Motion at 4:12-28, 5:1, 7:12-9:10. In contrast to Title II's enforcement provision discussed *supra*, Title III's associational provision states:

> "It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

42 U.S.C. 12182(b)(1)(E). Title II's implementing regulations closely follow Title III's association provision by providing:

"A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

28 C.F.R. § 35.130(g).

The City urges a narrow interpretation of Title III's associational provision and Title II's implementing regulations. The City points to a Department of Justice Technical Assistance Manual to support the proposition that Congress intended to confer associational standing only when the public entity knowingly discriminates against the individual on the basis that the individual associates with someone with a disability, such as an individual who is denied a city permit because she is an associate of an HIV-positive person. Doc. No. 4, Motion at 8; *see* Americans with Disabilities Act Title II Technical Assistance Manual Covering Accommodations and Commercial Facilities, § II-3.900. While the scenario the City advances is an appropriate one to confer associational standing, it is not the only scenario that can confer such standing to allege an associational claim under Title II.

In *Winkelman ex rel. Winkelman v. Parma City School District*, 550 U.S. 516 (2007), the Supreme Court considered whether parents of a boy with autism had standing to represent their son in court without legal representation when the parents were dissatisfied with administrative proceedings to establish an independent education program for their autistic son. The Court examined the Individuals with Disabilities Education Act and concluded that there was "no obstacle in the law to finding an intention by Congress to grant parents a stake in the entitlements created by IDEA. Without question a parent of a child with a disability has a particular and personal interest in fulfilling 'our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities.'" *Id*. at 529.

In *Blanchard v. Morton School District*, 509 F.3d 934 (9th Cir. 2007), the Ninth Circuit extended the policy behind the IDEA to both ADA Title II and RA Section 504 claims. In

6

*Blanchard*, the mother of an autistic boy filed suit against the Morton School District, alleging violations of the Individuals with Disabilities Education Act, the ADA, and the RA. *Id*. The Ninth Circuit held that the mother had associational standing "insofar as she is asserting and enforcing the rights of her son and incurring expenses for his benefit." *Id.* at 938.

In *Barker v. Riverside County Office of Education*, 584 F.3d 821, 827 (9th Cir. 2009), a special education teacher filed an anti-retaliation claim under ADA Title II and RA Section 504 against the local school district. The teacher alleged that she was fired in retaliation for advocating on behalf of disabled students. *Id*. at 824. The Ninth Circuit found that the teacher had standing and concluded that, "the language employed in the anti-retaliation provisions of Title II does not evince a congressional intent to limit standing to individuals with disabilities. Instead, the use of the phrase 'any individual' and the absence of any language limiting standing to those with disabilities indicates Congress's intent to grant standing under Title II 'as broadly as is permitted by Article III of the Constitution.'" *Id*. at 827 (internal citations omitted). The court further found that, "it appears that in formulating the language in Title II's anti-retaliation provisions, Congress recognized that disabled individuals may require assistance from others to defend their rights." *Id.*

Likewise, in *Cortez v. City of Porterville*, 1:14-CV-00061-LJO, 2014 WL 1101228 (E.D. Cal. Mar. 20, 2014), the plaintiff's granddaughter was confined to a wheelchair. In order to take his granddaughter to watch his grandson play baseball at a sports complex, the plaintiff had to carry his granddaughter and her wheelchair over a grassy track from the parking lot to the playing field. *Id*. at *1. The plaintiff filed a claim under ADA Title II and the defendant city filed a motion to dismiss for failure to state a claim upon which relief can be granted predicated upon a lack of associational standing. The *Cortez* court succinctly explained:

> "Title II provides a remedy to *any person* alleging discrimination on the basis of disability in violation of section 12132. The language employed in the enforcement provision does not evince a congressional intent to limit standing to individuals with disabilities. Instead, the use of the phrase 'any person' and the absence of any language limiting standing to

those with disabilities indicates Congress's intent to grant standing under Title II as broadly as is permitted by Article III of the Constitution."

*Id.* at *3 (emphasis in original) (internal citations omitted); *see also Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.*, 342 F. Supp. 2d 160, 165 (S.D.N.Y. 2004) (recognizing union's standing to enforce members' Title II's rights predicated on Title II creating a cause of action for *"any person alleging* discrimination on the basis of disability") (emphasis in original).

The ability of an individual without a disability to assert claims under Title II is consistent with Congress' purpose in enacting the ADA. Congress intended the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1),(2). Such standing under Title II advances "the Nation's proper goals … to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101(a)(7).

In consideration that disabled individuals may require assistance from others to defend their rights and that the language "any person" in the enforcement provision does not evince congressional intent to limit standing to individuals with disabilities, the Court holds that Cortez has standing to assert a Title II associational claim.

### ii.    Article III Standing

The City alleges Cortez "has pleaded no facts showing that he personally suffered a separate and distinct injury." Doc. No. 13 at 2:2-3. Thus, the City has challenged Cortez's Article III standing. To establish Article III standing:

"First, the plaintiff must have suffered an 'injury in fact.' This consists of an invasion of a legally—protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct serving as the basis of the lawsuit. In other words, the

injury has to be fairly traceable to the challenged action of the defendant and not the result of the conduct of a third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1077 (D. Haw. 2000) (citations omitted).

Here, Cortez alleges that on May 22, 2013, and on a number of other occasions, he visited the Park with his great-granddaughter, pushing her wheelchair as required. Doc. No. 1, Complaint at ¶ 21. During his visit, Cortez and his great-granddaughter encountered barriers, including sandy paths, that encumbered their navigation through the Park. Doc. No. 1, Complaint at ¶¶ 22-23. Cortez alleges that the Park facilities cause him and his great-granddaughter to "experience difficulty and feel anxious, embarrassed, conspicuous, unwelcomed and like second class citizens." Doc. No. 1, Complaint at ¶ 24. Therefore, Cortez alleges a concrete and particular injury separate and distinct from his great-grandaughter's.

Cortez alleges that his injuries are caused by the Park's condition and its facilities' incompliance with ADA Title II requirements. Doc. No. 1, Complaint at ¶ 39. Cortez alleges that the City owns, operates, and controls the Park's facilities. Doc. No. 1, Complaint at ¶ 8. Cortez's injuries are, therefore, fairly traceable to the challenged action.

Cortez seeks relief in the form of an injunction ordering the City to modify its facilities and practices to bring them into compliance with ADA Title II requirements. Cortez's alleged injuries are redressable by the Court. Thus, Cortez satisfies Article III requirements.

The City's motion to dismiss the first cause of action is denied.

**b. Rehabilitation Act Section 504 Standing**

Cortez alleges discrimination under RA Section 504, 29 U.S.C. § 794(a), under a theory of an aggrieved person within the meaning of RA Section 504. Doc. No. 1, Complaint at ¶ 46. The City responds that Cortez has failed to state a claim upon which relief can be granted. Doc. No. 4, Motion at 10:7-12:2. In particular, the City argues that Cortez has failed to plead that he is disabled within the meaning of Section 504 and that he has failed to plead that discrimination

occurred solely because of the disability. *Id*. The City's argument is unpersuasive.

In relevant part, Section 504 states:

"No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

29 U.S.C. § 794. Under Section 504, "[o]ne form of prohibited discrimination is the exclusion from a public entity's services, programs, or activities because of the inaccessibility of the entity's facility…." *Barden v. City of Sacramento*, 292 F.3d 1073, 1075 (9th Cir. 2002).

Thus, to establish a violation of Section 504, Cortez must show that (1) his granddaughter is handicapped within the meaning of the RA; (2) she is denied the benefit of or participation in the service; (3) she is denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance. *See* 29 U.S.C. § 794.

Cortez alleges that his great-granddaughter has significant disabilities, uses a wheelchair for mobility and is a "physically disabled person" within the meaning of Section 504. Doc. No. 1, Complaint at ¶ 5. Cortez alleges that he and his granddaughter are excluded from and denied full access to the Park. Doc. No. 1, Complaint at ¶¶ 22, 25. Cortez solely alleges that his granddaughter's disabilities are the reason she is excluded. Doc. No. 1, Complaint at ¶ 22. Cortez alleges that the City receives federal financial assistance. Doc. No. 1, Complaint at ¶ 7. Thus, Cortez has alleged a *prima facie* cause of action under Section 504.

Section 504's enforcement provision states:

"The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to *any person aggrieved* by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title."

29 U.S.C. § 794a(a)(2) (emphasis added). The Supreme Court has explained Section 504's

remedial boundaries:

> "Section 505(a)(2) of the Rehabilitation Act, in turn, declares that the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 ... shall be available" for violations of § 504, as added, 92 Stat. 2983, 29 U.S.C. § 794a(a)(2). Thus, the remedies for violations of § 202 of the ADA and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* which prohibits racial discrimination in federally funded programs and activities."

*Barnes v. Gorman*, 536 U.S. 181, 185 (2002). On a plain reading of Section 504, *any person aggrieved* by the City's failure to adhere to Section 504 may seek any form of relief available under Civil Rights Act of 1964 Title VI. Cortez has alleged that he is aggrieved by difficulty navigating his great-granddaughter's wheelchair through the Park. Accordingly, Cortez has statutory standing under Section 504.

The City's motion to dismiss the second cause of action is denied.

### c.  California Disabled Persons Act Standing

Cortez alleges discrimination under the DPA for the City's failure to ensure that the Park, a facility constructed or altered after 1981, complies with California disability access standards. Doc. No. 1, Complaint at ¶¶ 51, 52. Cortez also invokes California Civil Code Section 54(c), which states: "A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section." Doc. No. 1, Complaint at ¶ 53. Cortez prays for statutory damages and attorneys' fees pursuant to California Civil Code Section 54.3(a). Doc. No. 1, Complaint at ¶ 55. Cortez expressly declines to seek remedies under California Civil Code Section 55 and does not seek injunctive relief under the DPA. Doc. No. 1, Complaint at 14:1-3.

As with the ADA Title II and RA Section 504 causes of action, the City argues that Cortez's complaint should be dismiss for failure to state a claim upon which relief can be granted. Doc. No. 4, Motion at 12:3-26. The City's argument is persuasive.

The DPA incorporates ADA violations as a basis for relief. *Jankey v. Song Koo Lee*, 55 Cal. 4th 1038, 1045 (Cal. 2012). The DPA does not incorporate ADA Title II's remedies. Cortez must therefore seek remedies afforded to him by the DPA. The question becomes whether California Civil Code Section 54.3(a) affords Cortez relief as a non-disabled plaintiff.

The California Legislature created three avenues of relief for DPA causes of action. Cortez requests relief solely under Section 54.3(a). Doc. No. 1, Complaint at ¶ 55. In *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 457-58 (N.D. Cal. 1994), the court discussed in-depth whether Section 54.3(a) confers standing upon a non-disabled individual to sue on behalf of a disabled individual. The *Arnold* court explained:

> "California courts have instructed that where the words of a California statute are not ambiguous and their plain meaning can be given effect, that meaning should control; only where statutory text is ambiguous and does not resolve the issue in question should courts consult the variety of canons and rules of statutory construction that California courts have prescribed for application in different contexts. *Estate of Wilson,* 265 Cal.App.2d 943, 950, 71 Cal.Rptr. 822 (1 Dist.1968) (citing *County of Sacramento v. Hickman,* 66 Cal.2d 841, 59 Cal.Rptr. 609, 428 P.2d 593 (1967)).

> "The text of § 54.1 reads, in pertinent part:

>> 'Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of all ... places of public accommodation, amusement, or resort....'

> "Section 54.3, the code section providing for a damage remedy for violations of § 54.1 reads, also in pertinent part:

>> 'Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights ... of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each ... offense for [certain damages], suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2.'

> "Although its text does not say so in so many words, the clear inference supported by § 54.3 is that the liability for damages created under the code section may run only in favor of a party who has had her rights under the referenced antecedent code sections violated. This means that, for present purposes, only persons in whom § 54.1 vests rights may sue for damages under § 54.3. The most natural reading of § 54.1 is that the provision vests rights only in "individuals with disabilities." In view of that fact, the Court concludes that

it is the plain meaning of § 54.3 that the provision confers a cause of action only on disabled persons injured by disability access violations.

"This conclusion is reinforced when one compares the language of § 54.3 with that of § 55, the code section vesting certain persons with a cause of action for *injunctive* relief for violations of California disability access standards. Section 55 provides, in pertinent part:

> '*Any person who is aggrieved or potentially aggrieved* by a violation of Section 54 or 54.1 of this code [or various other provisions] may bring an action to enjoin the violation.'

"(Emphasis added). Unlike § 54.3 which limits its remedy to damages suffered by persons vested with rights under § 54.1, § 55 extends to all persons *aggrieved* (or even potentially aggrieved) by violations of § 54.1 the right to sue. The § 55 formulation gives rise to the possibility that even persons who are not themselves vested with rights under § 54.1 may still be injured by violations of others' § 54.1 rights such that they may be deemed to be "aggrieved" within the meaning of § 55, and therefore entitled to sue."

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 457-58 (N.D. Cal. 1994)

(alterations in original); *see also Jankey v. Song Koo Lee*, 55 Cal. 4th 1038, 1045 (Cal. 2012)

("Section 55 is part of the Disabled Persons Act, but it offers an independent basis for relief. It is

broader in two respects than the private right of action authorized by section 54.3: section 55

extends standing to those "potentially aggrieved," not just those who have been actually denied

access, and relief may be predicated on potential violations not only of sections 54 and 54.1…")

(internal citations omitted).

      As the *Arnold* court explained, Section 54.3(a) does not vest remedies for DPA violations

in a non-disabled individual as a disabled individual's companion. Accordingly, while Cortez may

have access to relief under Sections 54.3(b) and/or 55, he does not have access to relief under

Section 54.3(a). Because Cortez declines to seek a remedy other than that enumerated in Section

54.3(a), Cortez has failed to state a claim upon which relief can be granted.

      The City's motion to dismiss the third cause of action is granted.

**d.  Application for Stay and Early Evaluation Conference**

      The City has asked for a 90-day stay of proceedings pursuant to California Civil Code

Section 55.54(d)(1). Doc. No. 6 at 2:5. The City also requests a mandatory early evaluation

conference or similar proceeding pursuant to Civil Code Section 55.54(d)(2). "[F]or federal law to preempt state law, it is not necessary that a federal statute expressly state that it preempts state law. Federal law preempts state law if the state law 'actually conflicts' with federal law." *Hubbard v. SoBreck, LLC,* 554 F.3d 742, 744 (9th Cir. 2009). The ADA does not provide mandatory stays and early evaluation conferences to accommodate site inspections. "Any state law requirement that a claim brought under the ADA be subjected to such a procedure, then, clearly conflicts with federal law." *O'Campo v. Chico Mall, LP,* 758 F. Supp. 2d 976, 985 (E.D. Cal. 2010). Therefore, a stay of proceeding and an early settlement conference are not appropriately applied to the ADA and RA causes of action.

Federal courts considering claims under state law apply federal procedural law and state substantive law. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). "[W]hen a Federal Rule of Civil Procedure governs a situation, the Court applies the rule, even if in direct conflict with relevant state law. *Leuzinger v. Cnty. of Lake*, 253 F.R.D. 469, 472 (N.D. Cal. 2008). In this instance, "no federal rule or procedure addresses mandatory early evaluation conferences and stays of proceedings under the relevant federal Acts." *O'Campo v. Chico Mall, LP,* 758 F. Supp. 2d 976, 985 (E.D. Cal. 2010). Therefore, we determine if the requested action is procedural or substantive by whether it is outcome determinative. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 109 (1945).

In *O'Campo*, the court was faced with determining whether a stay of proceedings and a mandatory evaluation conference was substantive or procedural under ADA and DPA claims in a federal court. *O'Campo v. Chico Mall, LP*, 758 F. Supp. 2d 976, 985 (E.D. Cal. 2010). The *O'Campo* court determined that while an evaluation conference could presumably lead to resolution through settlement, it did not qualify as outcome determinative under the *Erie* doctrine. *Id*. Similarly, the court found that a stay of proceedings was not likely to be outcome determinative. *Id*. Therefore, neither action affected the parties' legal rights or entitlement to relief

14

and the court could not order parties to engage in the early evaluation conference. *Id.* The Court agrees.

The City's motion for a stay of proceedings and an early evaluation conference is denied.

### IV.    Conclusion

Based on the foregoing, IT IS HEARBY ORDERED that:

1.  The City's motion to dismiss the first cause of action for failure to state a claim upon which relief can be granted under Americans with Disabilities Act Title II is DENIED;

2.  The City's motion to dismiss the second cause of action for failure to state a claim upon which relief can be granted under Rehabilitation Act Section 504 is DENIED;

3.  The City's motion to dismiss the third cause of action for failure to state a claim upon which relief can be granted pursuant to California Civil Code Section 54.3(a) is GRANTED with prejudice; and

4.  The City's motion for a stay of proceedings and an early evaluation conference is DENIED.

IT IS SO ORDERED.

Dated:   August 8, 2014          _____

SENIOR  DISTRICT  JUDGE